**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTOIN MORRIESON,

      *Plaintiff*,

    v.

CITY OF JERSEY CITY, JERSEY CITY
POLICE DEPARTMENT, OFFICER DANIEL
SOTO, OFFICER RUANDY MENDOZA,
OFFICER PHILIP CHIDICHIMO, OFFICER
JOSEPH WEAVER, JOHN DOES 1-2 (fictitious
names),

      *Defendants*.

Civil Action No. 18-12974

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is Defendants' motion for summary judgment, D.E. 55, to which

Plaintiff Antoin Morrieson filed a brief in opposition, D.E. 63.  The Court reviewed all

submissions[1] made in support and opposition of the motion and considered the motion without

oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons that follow,

Defendants' motion is **GRANTED in part** and **DENIED in part**.

---

[1] Defendants' brief in support of their motion (D.E. 55-2) will be referred to as "Br."; and
Plaintiff's brief in opposition (D.E. 63) will be referred to as "Opp."  Defendants also rely on the
Certification of Brittany M. Murray ("Murray Cert.") and the attached exhibits (D.E. 55-3 – 55-
12), in addition to their Statement of Material Facts Not in Dispute ("DSOMF") (D.E. 55-1).
Plaintiff relies on the Declaration of Marc Arena ("Arena Decl.") and the attached exhibits (D.E.
62 – 62-8), in addition to his Counterstatement of Material Facts ("PSOMF") (D.E. 52).

I.      **BACKGROUND**[2]

On November 2, 2016, Jersey City Police Officers Daniel Soto and Ruandy Mendoza were working in a plainclothes patrol capacity when they encountered Plaintiff.  DSOMF ¶ 5.  Soto recognized Plaintiff as the subject of a "Be on the lookout," or "BOLO," issued by the police department.  *Id.* ¶¶ 7-8.  Mendoza had previously seen Plaintiff and knew that he was the subject of the BOLO.  *Id.* ¶ 9.

The parties dispute the subsequent events.  According to Defendants, Mendoza and Soto witnessed Plaintiff meet with two individuals, hand suspected CDS[3] to one of the individuals in exchange for currency, and place his hands back in his pocket.  *Id.* ¶ 10.  After the drug transaction, the officers observed Plaintiff walking on Concord Street.  *Id.* ¶ 13.  Mendoza and Soto then exited their vehicle with their badges exposed and identified themselves as police officers.  *Id.* ¶¶ 14-15.  As Mendoza was approaching, Plaintiff had his hands in his hoodie pocket.  *Id.* ¶ 17.  Both officers gave Plaintiff verbal commands to remove his hands from his pockets, but Plaintiff did not comply.  *Id.* ¶¶ 18-19.  Mendoza and Soto believed that Plaintiff may have been trying to conceal a weapon and grabbed Plaintiff's arms so he would not move his arms and attempt to flee.  *Id.* ¶¶ 20-21.  Plaintiff refused to take his hands out of his pockets and told the officers that they were not going to arrest him.  *Id.* ¶¶ 22-23.  Mendoza and Soto subsequently placed Plaintiff against a wall before Plaintiff elbowed Mendoza in the face and attempted to flee.  *Id.* ¶ 24.  Plaintiff then actively resisted arrest on the ground, grabbing Mendoza's arm.  *Id.* ¶¶ 25-26.  Plaintiff also grabbed Soto's

---

[2] The factual background is taken from DSOMF; PSOMF; the Murray Cert. and attached exhibits; and the Arena Decl. and attached exhibits.

[3] Defendants use the abbreviation "CDS" in their Statement of Undisputed Material Facts but do not define the term.  The Court assumes Defendants use CDS as an abbreviation for "controlled dangerous substance."

holster and service weapon, prompting Soto to use first strikes. *Id.* ¶ 27. Defendants maintain that, contrary to Plaintiff's claims, Plaintiff was not struck twenty times. *Id.* ¶ 28. At this point, Officer Weaver had joined the scene, and he assisted Mendoza and Soto in bringing one of Plaintiff's arms behind his back so he could be handcuffed. *Id.* ¶ 29. Officer Chidichimo then arrived on the scene as a supervisor. *Id.* ¶ 31.

Plaintiff, on the other hand, indicates that he was not engaging in a drug transaction but walking in his neighborhood with a female friend shortly before he was stopped by the officers. PSOMF ¶¶ 10, 13; Morrieson Dep. at 34:23-40:21. When Mendoza and Soto yelled for Plaintiff to stop, they were still inside their vehicle and did not have their badges exposed; Plaintiff was unaware that they were police officers at this time. PSOMF ¶¶ 14-15; Morrieson Dep. at 43:7-16. Plaintiff also asserts that Mendoza and Soto never instructed him to take his hands out of his pocket and that he did not tell the officers they were not going to arrest him. PSOMF ¶¶ 18-19, 23; Morrieson Dep. at 58:11-13; 42:12-14. Plaintiff maintains that he did not strike the officers, actively resist arrest, grab at the officers' guns, or try to flee. PSOMF ¶¶ 24-25; Morrieson Dep. at 56:8-57:15. By Plaintiff's estimate, he was struck approximately 20 times during the course of his arrest. PSOMF ¶ 28; Morrieson Dep. at 90:14-25.

Plaintiff filed his initial Complaint, asserting claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2, *et seq.*, against the City of Jersey City, the Jersey City Police Department, Officer Soto, and Officer Mendoza. D.E. 1. Defendants filed an Answer. D.E. 8. On October 31, 2018, Plaintiff filed an Amended Complaint (or "AC") adding claims against Weaver and Chidichimo, D.E. 10, who then filed an Answer, D.E. 25. The Amended Complaint states claims under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments for unreasonable seizure and unlawful arrest, due process violations, fabrication of

evidence, retaliatory arrest and prosecution, abuse of process, equal protection, and failure to intervene.  AC ¶¶ 27-29.  The Amended Complaint additionally contains a count for excessive force under Section 1983 and the NJCRA.  *Id.* ¶¶ 46-51.  Plaintiff also brought a *Monell* claim against Jersey City and the Jersey City Police Department for failure to train and/or supervise the individual Defendants.  *Id.* ¶¶ 30-45.

On July 19, 2021, the Court dismissed Plaintiff's *Monell* claim against the City of Jersey City and the Jersey City Police Department because Plaintiff agreed to a voluntarily dismissal.  D.E. 54.  The Court also granted Defendants leave to file a motion for summary judgment.  *Id.* The current motion followed.

## II.   STANDARD OF REVIEW

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Saldana v. KmartCorp.*, 260 F.3d 228, 232 (3d Cir. 2001) (the court must "view the facts in the light most favorable to the nonmoving party").  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to

determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Where a videotape record exists, a court should "view[] the facts in the light depicted by the videotape," and should not adopt a version of the facts "which is blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment."  *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.    ANALYSIS

Defendants seek summary judgment on all remaining counts of the Amended Complaint. As noted, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To prove a Section 1983 claim, a plaintiff must demonstrate that (1) a person deprived him of a right secured by the Constitution or federal law; and (2) the person who deprived him of that right acted under color of state law. *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *2 (D.N.J. July 29, 2016). Because there is no dispute that Defendants acted under color of state law for purposes of Section 1983, the focus is on whether Defendants violated Plaintiff's constitutional rights.

Plaintiff also asserts excessive force claims pursuant to the NJCRA. The NJCRA affords a private right of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. § 10:6-2. The "NJCRA was modeled after § 1983, [so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez*, 2016 WL 4107689, at *5 (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA excessive force claims together.

Plaintiff does not oppose summary judgment as to his Sixth Amendment, malicious prosecution, and abuse of process claims, nor as to his claims against the Jersey City Police Department. Opp. at 5 n.5. Accordingly, those claims are dismissed. The Court next analyzes Plaintiff's remaining claims.

### A. Claims Against the City of Jersey City

On July 19, 2021, the Court dismissed Count Two of Plaintiff's Amended Complaint stating a *Monell* claim against the City of Jersey City and the Jersey City Police Department. D.E. 54. Counts One and Three of the Amended Complaint are brought against all Defendants, which seems to include the City of Jersey City. AC ¶¶ 27-29, 46-51. A municipality or local governing body cannot be held liable under a theory of *respondeat superior* for a Section 1983 claim. *Monell v. Dept. of Social Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). Instead, a municipality may be liable under Section 1983 only "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694). Plaintiff has not made the requisite showing to sustain a *Monell* claim against Jersey City. Thus, to the extent any of Plaintiff's *Monell* claims against the City of Jersey City remain after the Court's dismissal of Count Two, summary judgment is granted as to those claims.

**B.  Fifth Amendment**

Defendants argue that Plaintiff's Fifth Amendment due process claim must be dismissed as inapplicable to this matter because the Defendants who allegedly violated Plaintiff's rights are state officials, and the Fifth Amendment due process clause applies only to federal officials.  Br. at 11.  The Court agrees; thus, Plaintiff's Fifth Amendment claim is dismissed.  *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (noting that the plaintiff's Fifth Amendment claim failed because Fifth Amendment due process applies only to federal officials and the defendant was a state official).

**C.  Fourteenth Amendment**

Defendants seek summary judgment for Plaintiff's Fourteenth Amendment[4] claims because Plaintiff's excessive force, false arrest, and malicious prosecution[5] claims are cognizable under a specific constitutional provision: the Fourth Amendment.  Br. at 11.  Pursuant to the "more specific provision" rule, "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).  A false arrest or imprisonment claim that is based on the lack of probable cause "is grounded in the Fourth Amendment's guarantee against unreasonable seizures."  *Groman v. Township of Manalapan*, 47 F.3d 638, 636 (3d Cir. 1995).  Excessive force claims also arise under the Fourth Amendment.  *Bergdoll*, 515 F.

---

[4] Defendants are not challenging the incorporation of certain federal constitutional rights to state and local actors through the Fourteenth Amendment.

[5] The Court does not address Plaintiff's malicious prosecution claim because it has been dismissed on other grounds, as noted above.

App'x at 170.   Accordingly, the Court will analyze Plaintiff's excessive force and false arrest claims under the Fourth Amendment.

### D.  First Amendment Retaliation

Plaintiff brings a First Amendment claim for retaliatory arrest and prosecution, alleging that he was illegally stopped by Mendoza and Soto after asking the officers to identify themselves. To bring a First Amendment retaliation claim pursuant to Section 1983, plaintiffs "must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).   "In order to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 133 (3d Cir. 2017) (citing *Lauren W.*, 480 F.3d at 267).   Moreover, to succeed in showing causation, a plaintiff "must establish the [protected] activities were substantial and motivating factors" in the allegedly retaliatory conduct.  *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361 (3d Cir. 2021).

The Third Circuit has instructed that courts "must be diligent" in enforcing the causation requirement lest a public actor "be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *Lauren W.*, 480 F.3d at 267.  In the context of First Amendment retaliation claims against police officers, the Third Circuit has further admonished that courts "should be cautious in allowing [the claims] to proceed to trial in the face of the officer's summary judgment motion," because "officers should not by reason of potential civil liability be discouraged from

intervening when their services are needed." *Est. of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003).

The parties dispute only the third element: whether there was a causal connection between the protected activity and the retaliatory action. Defendants argue that "[t]here is no evidence in the record" to support Plaintiff's First Amendment claims because Officers Mendoza and Soto approached Morrieson after he engaged in what appeared to be a drug transaction. Br. at 16. Plaintiff, on the other hand, posits that he was arrested because he asked the officers to identify themselves, AC ¶¶ 20-23, and asked what the probable cause was for stopping him, Opp. at 21-22. Thus, according to Morrieson, genuine issues of material fact exist as to whether the officers retaliated against him because he requested the reason he was being stopped. Opp. at 22.

By Plaintiff's account, there was certainly temporal proximity between his asking the officers about probable cause and the subsequent arrest. *See* Morrieson Dep. at 43:23-44:12; 46:2-47:5. However, in light of the factual circumstances, this temporal proximity is not "unusually suggestive" of a causal link between Morrieson's questions to the officers and his arrest. *Rink*, 717 F. App'x at 133. First, according to Plaintiff's own testimony, Mendoza and Soto initially approached Plaintiff in their vehicle prior to his saying anything to the officers. Morrieson Dep. at 40:22-42:14. Putting aside whether the officers approached because they witnessed Morrieson engaging in what they believed was a drug transaction, that the officers initially approached Morrieson *before* he questioned them significantly undermines any inference that his speech caused the arrest. Further, again according to Plaintiff's own testimony, Plaintiff began walking away from the officers after he asked them about probable cause and did not receive an answer. *Id.* at 43:23-44:12. It was at this juncture that Mendoza and Soto arrested Morrieson. *Id.* at 46:2-47:5. Based on the record, it would be reasonable to infer that Morrieson's walking away from

10

the officers—and not his questioning—caused the subsequent arrest.  Thus, even viewed in the light most favorable to Plaintiff, the facts surrounding his arrest do not allow for a reasonable inference that his questions to the officers were "substantial and motivating factors" in his arrest. *Dondero*, 5 F.4th at 361; *see also Viola v. Borough of Throop*, 387 F. App'x 219, 222 (3d Cir. 2010) (affirming summary judgment for the defendants where the district court found that the plaintiff "presented no evidence by which a jury could conclude that his filing of a grievance was a 'substantial motivating factor'" for the alleged retaliatory conduct).

The Court is mindful of the Third Circuit's admonition that courts must diligently enforce the causation requirement and be judicious in allowing First Amendment retaliation claims to proceed to trial because officers should not be discouraged from intervening when their services are needed.  *See Lauren W.*, 480 F.3d at 267; *Marasco*, 318 F.3d at 513.  Of course, that is the factual dispute at issue here—if Defendants are correct, they had probable cause; if Plaintiff is, Defendants did not.  Moreover, the Court could find no authority upholding a First Amendment retaliation claim under similar circumstances.  Plaintiff certainly does not cite to any.  This is not a situation where, for example, Plaintiff was lawfully protesting and then arrested for his speech. And if the Court were to permit this claim to proceed, the Court is concerned that a claim traditionally couched in Fourth Amendment terms (due to lack of probable cause) would then be transformed into First Amendment retaliation matter if a defendant merely said something before he was unlawfully arrested.

Accordingly, summary judgment on Plaintiff's First Amendment retaliation claim is granted.

### E.  Unlawful Seizure and False Arrest and Imprisonment

Plaintiff also brings claims for unreasonable seizure and false arrest and imprisonment. AC ¶ 28.  "An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983." *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).  "The proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman*, 47 F.3d at 634-35 (quoting *Dowling*, 855 F.2d at 141).  "Where the police lack probable cause to make an arrest, the arrestee has a claim under [Section] 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* at 636 (quoting *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)).

Probable cause exists if, at the time a suspect is arrested, "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).  In determining whether a police officer had probable cause to arrest, a court must review the totality of the circumstances of the events leading up to the arrest and must do so from the "standpoint of an objectively reasonable police officer[.]" *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (internal citation omitted).  "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 789-90 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  The existence of probable cause is frequently a question of fact that is not appropriate for resolution through summary judgment. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

It is undisputed that Plaintiff was arrested, which also constitutes a seizure. *See Black v. Montgomery County*, 835 F.3d 358, 364-65 (3d Cir. 2016), *as amended* (Sept. 16, 2016). As to probable cause to support the arrest, Defendants argue that Soto and Mendoza had probable cause to arrest Plaintiff because they witnessed him engage in what they reasonably believed to be a hand-to-hand drug transaction in an area they were patrolling specifically in response to resident complaints about drug use and sales. Br. at 13. Defendants continue that because Soto and Mendoza observed this criminal conduct firsthand, they had reasonably trustworthy information sufficient to justify their belief that Plaintiff was committing an offense. *Id.* at 14. However, Plaintiff disputes this version of events. According to Plaintiff, he was simply walking around his neighborhood before he was stopped and arrested. Morrieson Dep. at 34:23-40:21. Plaintiff also represents, and Defendants do not deny, that the charges against him for engaging in a drug transaction were ultimately dropped. *See* Opp. at 17-18. Because genuine issues of material fact exist as to whether Defendants witnessed Plaintiff engage in a drug transaction (or reasonably believed that they did)—and thus, whether there was probable cause to arrest Plaintiff—the Court denies summary judgment on Plaintiff's unreasonable seizure and false arrest and imprisonment claims.

### F. Excessive Force

Plaintiff brings a claim against all Defendants for the use of excessive force against him during the course of his detention and/or arrest. AC ¶¶ 46-51. "A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002). The parties do not dispute that a seizure occurred; therefore, the Court considers whether the force used by each of the individual Defendants was reasonable.

13

### 1.  Liability of Individual Defendants

Defendants first argue that Plaintiff's "general allegations" of excessive force are unsupported because officers "cannot be sued solely for their physical presence at or near a scene." Br. at 22-23.  When more than one officer is sued on a Fourth Amendment excessive force claim, the district court must evaluate each officer's liability separately.  *Bishop v. Hackel*, 636 F.3D 757, 767 (6th Cir. 2011).  Neither supervisors nor an individual defendant's "cohorts who happen to be in the immediate vicinity" may be vicariously liable under Section 1983.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (noting that the Third Circuit has "imported these precepts [of vicarious liability] into the excessive force context").  Accordingly, the Third Circuit has found that where a plaintiff sues multiple officers, alleging that a single officer exerted excessive force, but cannot identify which officer was the perpetrator, there is an insufficient basis to hold the defendants liable.  *See Howell v. Cataldi*, 464 F.2d 272 (3d Cir. 1972); *Sharrar*, 128 F.3d 810.  In contrast, in *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002), the Third Circuit reversed a grant of summary judgment on an Eighth Amendment claim where the plaintiff testified that *all* five defendant officers were exerting force against him, even though he could not see all five of them during the alleged beating.  In sum, an excessive force claim cannot survive summary judgment where there exists "a dispute about *the possibility* of each officer's participation," whereas "a dispute about the extent of each officer's participation," is "a classic factual dispute to be resolved by the fact finder."  *Jutrowski*, 904 F.3d at 291 (emphasis added) (distinguishing *Howell* and *Sharrar* from *Smith* in the context of reviewing the district court's grant of summary judgment for an excessive force claim).

As an initial matter, the Court grants summary judgment on Plaintiff's excessive force claim against Officer Chidichimo because Plaintiff concedes that Chidichimo did not make

physical contact with him.   DSOMF ¶ 31; PSOMF ¶ 31.   Regarding the remaining individual Defendants, the record shows that Mendoza, Soto, and Weaver all used force against Plaintiff. After the arrest, Mendoza and Soto each filled out a "Use of Force" report indicating that they each used compliance holds on Plaintiff and hit him multiple times.   *See* Arena Decl., Exs. 5-6.   Weaver also filled out a "Use of Force" report indicating that he used a compliance hold on Plaintiff.   *See id.*, Ex. 8.   Further, Mendoza testified that he kneed Morrieson during the incident, Mendoza Dep. at 55:5, and after reviewing video footage of the encounter, he additionally testified that the footage showed Soto using closed fist strikes on Morrieson, *id.* at 63:16-19.   Soto confirmed during his testimony that he punched Plaintiff multiple times.   Soto Dep. at 63:4-8; 78:7-12.   The officers' testimony is consistent with Plaintiff's testimony that while he was on the ground, Mendoza had a knee on his back and Soto was punching him in the face.   Morrieson Dep. at 48:2-50:17.   Moreover, the video footage shows one officer kneeing and punching Plaintiff and another punching him. Murray Cert. Ex. J, "View from Street" Video at 0:10-0:14; 0:30-0:36; 0:52-1:08; "View from 2nd Floor" Video at 0:04-0:35.   Thus, there is no dispute "about the possibility of each officer's participation," *Jutrowski*, 904 F.3d at 291; rather, the record clearly establishes that Mendoza, Soto, and Weaver each used force against Plaintiff.   The Court next analyzes whether each of the officer's use of force was objectively reasonable.

### 2.   Reasonableness of Force

In assessing the reasonableness of the force used, a court should consider "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).   "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting

arrest or attempting to evade arrest by flight." *Kopec v. Tate*, 361 F.3d 772, 776–77 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 396).   A court may also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.*  Additionally, "the fact that the physical force applied [by the officer(s)] was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." *Sharrar*, 128 F.3d at 822.

First, as to Officer Weaver, video footage shows that he arrived on the scene as Mendoza and Soto were struggling with Plaintiff on the ground.  Murray Cert. Ex. J, "View from Close Up" Video at 0:22-0:25.  Weaver then makes physical contact with Morrieson by placing his weight on Morrieson's back and moving Morrieson's arm behind his back so the officers could handcuff him.  *Id.* at 0:25-0:40.  Weaver has his weight on Morrieson for under 25 seconds in total.  *Id.* at 0:25-0:50.  The video does not show Weaver striking Plaintiff in any way, and Plaintiff points to no evidence showing otherwise.  In fact, the only evidence that Plaintiff proffers to support his excessive force claim against Weaver is a "Use of Force" report indicating that Weaver used a compliance hold on Plaintiff.  *See* Arena Decl., Ex. 8.  This evidence is "'not significantly probative'" that the force used by Weaver was unreasonable.  *Messa*, 122 F. Supp. 2d at 528 (quoting *Anderson*, 477 U.S. at 249-50).  Because there is no genuine dispute of material fact as to this issue, Defendants are entitled to summary judgment on Plaintiff's excessive force claim against Weaver.

As to Officers Mendoza and Soto, Defendants argue that their use of force was reasonable because "the facts show that [they] were dealing with a suspect that was actively resisting their lawful commands from the moment they first encountered him."  Br. at 32.  Defendants specifically

cite to the officers' knowledge that Plaintiff was the subject of a BOLO; Plaintiff's alleged use of physical force against the officers, attempt to flee and ,active resistance to arrest; and Soto feeling "a tug on his weapon which he interpreted as an attempt to disarm him." *Id.* Plaintiff counters that summary judgment should be denied based on the factors analyzed in *Graham*, *Kopec*, and *Sharrar*. *See* Opp. at 10-14.

Assessing the factors set forth by the Supreme Court and the Third Circuit, several facts could lead a reasonable jury to conclude that Mendoza and Soto used excessive force. First, they were contending only with Morrieson, and no other suspects.[6] Second, the record demonstrates that the physical force applied by Mendoza and Soto resulted in significant injury to Plaintiff. According to the expert report of Arthur C. Elias, D.M.D., Plaintiff suffered extensive periorbital swelling and bruising, an orbital fracture, and a left eye swollen shut. Arena Decl., Ex. 2. Morrieson continued to suffer left eye pain, blurry vision, redness, and double vision over the next few weeks. *Id.* Dr. Elias's report is consistent with the photographs submitted by Plaintiff showing bruising around both eyes. *See* Arena Decl., Ex. 1.

Other facts relevant to whether Mendoza and Soto used excessive force are in dispute and not appropriate for resolution by summary judgment. For instance, the parties provided differing accounts of the events leading up to Morrieson's arrest. Defendants allege that Mendoza and Soto witnessed Plaintiff engaging in what they believed to be a drug transaction, DSOMF ¶ 10, while Plaintiff maintains that he was merely walking around his neighborhood prior to his arrest, PSOMF

---

[6] One of the bystanders filming the incident was ultimately arrested for obstruction of justice, *see* Mendoza Dep. at 61:15-62:17, but Defendants do not argue that his presence was a factor justifying the force used against Morrieson. Nor does it appear from the video footage that the bystander was disruptive of the arrest. *See generally*, Murray Cert. Ex. J, "View from Close Up" Video.

¶ 10.[7]  Further, the parties disagree as to whether Mendoza and Soto identified themselves as police officers when they first approached Plaintiff.  DSOMF ¶¶ 14-15; PSOMF ¶¶ 14-15.  The parties also provided conflicting testimony regarding Plaintiff's conduct during the arrest.  Defendants contend that Plaintiff was actively resisting, attempting to evade arrest, and trying to grab Soto's weapon.  DSOMF ¶¶ 21-27.  Plaintiff maintains that he did not attempt to flee, resist arrest, strike the officers, or grab at the officers' weapons.  PSOMF ¶¶ 21-26; Morrieson Dep. at 56:8-57:15.  Rather, Morrieson testified that he was lying still on the ground and was only moving his hands in an attempt to cover his face.  Morrieson Dep. at 56:15-19.  Finally, the parties dispute how many times Plaintiff was struck by the officers.  *See* DSOMF ¶ 28; PSOMF ¶ 28.

Courts within the Third Circuit have consistently found that excessive force claims should be resolved by a jury where, as here, the plaintiff and the defendants provide conflicting testimony regarding the circumstances of the arrest.  For example, in *Suarez v. City of Bayonne*, 566 F. App'x 181 (3d Cir. 2014), the Third Circuit reversed the district court's grant of summary judgment where the plaintiff testified that the defendant police officers jumped out of an unmarked car without identifying themselves as police officers, hit him, tackled him to the ground, handcuffed him, and continued to hit him.  The *Suarez* court found that in granting summary judgment, the district court impermissibly determined that the plaintiff's deposition testimony was not credible in the face of the officers' conflicting testimony.  *Id.* at 186.  The court continued that "[w]hether [the plaintiff's] testimony is worthy of credence is a question for the jury, not for the District Court on summary judgment."  *Id.*  Similarly, in *Johnson v. DeProspo*, Civ. No. 08-1813, 2010 WL 5466255 (D.N.J.

---

[7] It is undisputed, however, that Morrieson pled guilty to possession of marijuana as it related to this incident.  DSOMF ¶ 33; PSOMF ¶ 33.  Possession of marijuana is not a severe offense.  *See Gonzalez v. Borough of Red Bank*, Civ. No. 18-13009, 2020 WL 2029338, at *5 (D.N.J. Apr. 28, 2020); *cf. Niblack v. Murray,* Civ. No. 12-6910, 2016 WL 4086775, at *3 (D.N.J. July 29, 2016) (suspected possession of a single small package of heroin was not a particularly severe crime).

Dec. 30, 2010), the defendant police officers alleged that the plaintiff tried to grab one of the officer's weapons during the incident, justifying the officer hitting the plaintiff multiple times with his baton. *Id.* at *5. The plaintiff denied this allegation and instead testified that the officers struck him from behind and continued to assault him with their batons, fist, and feet after he was handcuffed. *Id.* The *Johnson* court found that genuine issues of material fact remained as to whether the officers used excessive force because "both sides have differing versions of the events surrounding the arrest, and resolution of the disputed facts will likely depend significantly on credibility determinations, which are inappropriate at the summary judgment stage." *Id.*

Here, similarly, summary judgment is inappropriate because Plaintiff and Defendant offer conflicting narratives regarding material events surrounding Plaintiff's arrest. If Morrieson's version of the facts is accepted, a reasonable jury could conclude that Mendoza and Soto employed excessive force under the circumstances. *See*, *e.g.*, *Suarez*, 566 F. App'x at 182, 186 (finding that a jury could reasonably find that excessive force was used if they credited the plaintiff's testimony that the officers jumped out of an unmarked car without identifying themselves as police officers, tackled the plaintiff to the ground, handcuffed him, and continued to hit him when he was not resisting or fleeing); *Santa Maria v. City of Elizabeth (N.J.)*, Civ. No. 15-3243, 2018 WL 4110927, at *6 (D.N.J. Aug. 28, 2018) (ruling that a reasonable jury could conclude that excessive force was used if they accepted the plaintiff's account that two officers administered blows to him when he was already handcuffed and face-down on the ground with two officers at his sides because at that juncture, the plaintiff did not pose an imminent threat to the officers or the public). Because "genuine issues exist as to the events leading up to [Morrieson's] arrest, the degree of [Morrieson's] resistance to arrest, and the extent of [the officers'] use of force," summary judgment is denied. *Hill v. Algor*, 85 F. Supp. 2d 391, 400 (D.N.J. 2000).

Moreover, while certain factual circumstances are in dispute, video footage of the latter portion of the arrest provides an additional basis to conclude that Mendoza and Soto used excessive force.  Based on two videos of the incident, Mendoza and Soto continued to strike Plaintiff once he was on the ground and ostensibly contained by the officers.  *See* Murray Cert. Ex. J, "View from Street" Video at 0:10-0:14; 0:30-0:36; 0:52-1:08; "View from 2nd Floor" Video at 0:04-0:35. A different video taken from several feet away shows that at least during the later portion of the arrest, Plaintiff is lying still and attempting to cover his face and head with his hands while the officers are on top of him and have one of his hands in handcuffs.  *See* Murray Cert. Ex. J, "View from Close Up" at 0:00-0:25.  Because a reasonable jury could find from the video footage that Mendoza and Soto used excessive force, summary judgment on Plaintiff's excessive force claims against the two officers is denied on this additional ground.

### G.  Failure to Intervene

Plaintiff also argues that genuine issues of material fact exist as to his failure to intervene claim against Weaver and Chidichimo.  Failure to intervene is a cognizable theory of liability which applies to a law enforcement officer's duty to prevent another officer from using excessive force.  *Smith*, 293 F.3d at 650-51.  A threshold issue is whether excessive force was in fact used. If there is excessive force, then an officer must have a "realistic and reasonable opportunity to intervene" before the officer can be liable for failing to intervene.  *Id.* (citation omitted).

As discussed above, a reasonable jury could find that Mendoza and Soto used excessive force against Plaintiff.  The inquiry turns to whether Weaver and Chidichimo had a realistic and reasonable opportunity to intervene.  Based on the video footage, when Weaver and Chidichimo arrived on the scene, Soto and Mendoza were struggling with Morrieson on the ground but neither officer was striking or punching Morrieson with their hands.  Murray Cert. Ex. J, "View from

Street" Video at 0:22-0:32.  However, Mendoza continued to place his knee on Plaintiff, at times

applying additional pressure and kneeing him.  *Id.* at 0:22-0:40.  Mendoza has his knee on Plaintiff

for at least 18 seconds while Weaver is present on the scene, and for at least 10 seconds while

Chidichimo is present.  *Id.*  "[V]iew[ing] the facts in the light depicted by the videotape," the Court

finds that a reasonable jury could determine that Weaver and Chidichimo had a realistic and

reasonable opportunity to prevent excessive force from being used against Morrieson.  *Scott*, 550

U.S. at 381.  There is also a genuine issue as to whether Weaver and Chidichimo had a reasonable

opportunity to intervene after Plaintiff was fully handcuffed and was struck by one of the other

officers.  Murray Cert. Ex. J, "View from Street" Video at 4:44.  Therefore, the Court denies

summary judgment on Plaintiff's claim against Weaver and Chidichimo for failure to intervene.

### H.  Fabrication of Evidence

Plaintiff brings a fabrication of evidence claim, AC ¶ 28, and alleges that he was injured

as a result of individual Defendants "communicat[ing] with prosecutors and provid[ing] a false

narrative of the events surrounding the arrest," *id.* ¶¶ 25-26.  To plead a claim for fabrication of

evidence, a plaintiff must demonstrate that there was "a reasonable likelihood that, absent that

fabricated evidence, the defendant would not have been criminally charged."  *Black*, 835 F.3d at

371.  To meet the "reasonable likelihood" standard, a plaintiff must "draw a meaningful connection

between her particular due process injury and the use of fabricated evidence against her."  *Id.* at

372 (internal quotation omitted).  "[A] civil plaintiff's fabricated evidence claim should not survive

summary judgment unless he can demonstrate that the fabricated evidence 'was so significant that

it could have affected the outcome of the criminal case.'"  *Id.* (quoting *Halsey v. Pfeiffer*, 750 F.3d

273, 295 (3d Cir. 2014)).  Moreover, "testimony that is incorrect or simply disputed should not be

treated as fabricated merely because it turns out to have been wrong."  *Id.* (quoting *Halsey*, 750

F.3d at 295). Rather, there must be "'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith." *Id.* (quoting *Halsey*, 750 F.3d at 295). The hurdles facing a plaintiff alleging a due process violation for fabrication of evidence are so significant that the Third Circuit has cautioned that "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Halsey*, 750 F.3d at 295.

Defendants first contend that Plaintiff's fabrication of evidence claim is not viable because all charges against Plaintiff were ultimately dismissed by way of a plea agreement, save for one count of possession of marijuana. Br. at 18-19. Thus, according to Defendants, Plaintiff did not achieve a favorable termination of his claims as required to bring a fabrication of evidence claim. *Id.*[8] However, the cases cited by Defendants are inapposite. Nor is the Court aware of Third Circuit precedent limiting fabrication of evidence claims to situations in which the plaintiff was acquitted at trial of the charges brought against him or her. Rather, in the context of fabrication of evidence claims, the Third Circuit "makes no distinction between fabricated evidence leading to a wrongful conviction and *wrongful criminal charges*." *Black*, 835 F.3d at 370 (emphasis added). Based on this reasoning, a fabrication of evidence claim may be predicated upon allegedly fabricated evidence that resulted in criminal charges against the plaintiff, regardless of whether those charges were ultimately presented to a jury or were dismissed by way of a plea agreement. This reasoning aligns with the Second Circuit's conclusion that a plaintiff alleging a Section 1983

---

[8] Contrary to Defendants' position, dismissal of the claims against Plaintiff by way of a plea agreement may qualify as a favorable termination. *See Kazar v. City of Camden*, Civ. No. 15-1527, 2016 WL 680432, at *3 (D.N.J. Feb. 19, 2016) (noting that the plaintiff's assertion that the prosecutor dismissed the charges on the basis of insufficient evidence suggested that the prosecution terminated favorably for the plaintiff).

fair-trial claim need not establish "a favorable termination indicative of innocence." *Smalls v. Collins*, 10 F.th 117, 133 (2d Cir. 2021); *see also Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016) (noting that the Second, Fifth, Eighth, Ninth, and Tenth Circuits "have all found denials of due process *when charges rest on fabricated evidence*") (internal quotation omitted) (emphasis added). Thus, Plaintiff's fabrication of evidence claim is not foreclosed by the fact that the charges against Plaintiff were dismissed by way of a plea agreement.

Defendants additionally argue that there is no evidence to support Plaintiff's contention that he was injured by Defendants' alleged provision of a false narrative to prosecutors or that demonstrates a "meaningful connection" between the alleged fabricated evidence and due process injury. Br. at 18. Plaintiff counters that the evidence contradicts the false narrative provided by the officers, "specifically that [P]laintiff (1) disarmed or attempted to disarm a police officer, (2) assaulted a police officer, and (3) resisted or eluded an officer[.]" Opp. at 19. Morrieson points to his testimony that he did not attempt to grab the officers' guns, did not elbow or swing his arms at the officers, and did not attempt to flee or elude the officers during arrest. Morrieson Dep. at 57:6-8; 56:8-24; 57:13-15.

Testimony denying statements made in a police report and "'he said, she said'" disputes are insufficient to support a fabrication of evidence claim. *Boseman v. Upper Providence Twnshp.*, 680 F. App'x 65, 70 (3d Cir. 2017). Rather, there must be "actual evidence of fabrication." *Id.* Here, video footage of the encounter provides actual evidence that casts doubt upon Mendoza and Soto's accounts of the incident. Video footage shows that Plaintiff's hands were covering his face during the encounter. Murray Cert. Ex. J, "View from Close Up" Video at 0:00-0:25. Moreover, based on a review of the videos, it does not appear that Plaintiff was attempting to escape or elude the officers. *See generally*, Murray Cert. Ex. J. The Court acknowledges that the video footage

does not capture the entirety of the incident, and therefore the events narrated by Mendoza and Soto could have occurred prior to the portion captured on video. Nonetheless, Plaintiff has provided sufficient "evidence supporting a conclusion that [Mendoza and Soto] are aware that evidence is incorrect or that the evidence is offered in bad faith." *Black*, 835 F.3d at 371. Summary judgment on Plaintiff's fabrication of evidence claim is denied.

## I. Qualified Immunity

Defendants argue that Mendoza, Soto, Weaver, and Chidichimo are entitled to qualified immunity. Br. at 23-33. Qualified immunity can protect a state actor from liability in a Section 1983 case. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). A court must engage in the following two-part inquiry to determine whether qualified immunity applies: (1) whether the allegations, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to consider either prong of the two-part analysis first. *Id*. at 236.

"The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). Moreover, qualified immunity is an affirmative defense for which a defendant bears the burden of proof. *See Goldenbaum v. DeLorenzo*, No. 08-1127, 2010 WL 5139991, at *11 (D.N.J. Dec. 10, 2010). In deciding qualified immunity questions at summary

judgment, a court must view the facts in the light most favorable to the plaintiff.  *Id.*; *see also Scott*, 550 U.S. at 378.  Thus, summary judgment may be granted to a defendant if, when interpreting the facts in the light most favorable to the non-moving party, the court determines that the evidence does not support a violation of a clearly established constitutional right.  *Mitchell v. Forsyth*, 472 U.S. 511, 546 (1985) (stating that "when a trial court renders a qualified immunity decision on a summary judgment motion, it must make a legal determination very similar to the legal determination it must make on a summary judgment motion on the merits"); *see also Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Scott*, 550 U.S. at 378.

### 1.  Officers Mendoza and Soto

As discussed above, genuine issues of material facts remain as to Plaintiff's claims against Mendoza and Soto for unlawful seizure, false arrest and imprisonment, excessive force, and fabrication of evidence.  Conflicting evidence must be weighed by a jury to resolve whether the officers had probable cause to arrest Morrieson, whether they used reasonable force in effectuating the arrest, and whether they were aware that the evidence they provided against Morrieson was incorrect or offered in bad faith.  These "genuine issue[s] of material fact will preclude summary judgment on qualified immunity."  *Giles*, 571 F.3d at 326; *see also Santa Maria*, 2018 WL 4110927, at *6 ("To find qualified immunity, a fact finder would have to weigh conflicting evidence and resolve the facts in the officers' favor, which cannot properly be done on summary judgment.").

### 2.  Officers Weaver and Chidichimo

Defendants also argue that Weaver and Chidichimo are entitled to qualified immunity on Plaintiff's failure to intervene claim.  Br. at 27-31.  At the time of Plaintiff's arrest, a police officer's duty to intervene to prevent excessive force was clearly established.  *See Smith*, 293 F.3d

at 650-51 (holding that a police officer may be liable for failure to intervene when another officer uses excessive force); *Garbacik v. Janson*, 111 F. App'x 91, 94 (3d Cir. 2004) ("[T]he duty to intervene on the part of nonsupervisory employees was clearly established [in 1997] at the time of the incident").  And as discussed above, viewing the facts in the light most favorable to Morrieson, there is a genuine dispute of material fact as to the failure to intervene claim against Weaver and Chidichimo.  Thus, Weaver and Chidichimo are not entitled to summary judgment on the grounds of qualified immunity.

### IV.     CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (D.E. 55) is **GRANTED in part** and **DENIED in part**.  An appropriate Order accompanies this Opinion.

Dated: March 18, 2022

John Michael Vazquez, U.S.D.J.